UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ROBBIN SULLIVAN,

Plaintiff,

v.                                                    Case No. 19-C-778

DIANE WESSEL,

Defendant.

## DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff Robbin Sullivan, who worked as a part-time janitor for the Village of Hortonville, sued Diane Wessel, the former Administrator for the Village, after Wessel terminated Plaintiff's employment on May 31, 2017. At the time her employment with the Village was terminated, Plaintiff hadn't shown up for work since the beginning of the year. Despite this fact, Plaintiff claims that Wessel terminated her because she was married to the Chief of the Hortonville Police Department and thereby violated her constitutional right to intimate association. The case is before the court on the defendant's motion for summary judgment, which for the following reasons is granted.

## BACKGROUND

Sometime in 2014, Plaintiff was hired to perform part-time janitorial work in the area of the Hortonville Village Hall occupied by the Hortonville Police Department and the Municipal Court. At the time she was hired, Plaintiff's husband was the Village Police Chief. The parties dispute whether Plaintiff was hired at the insistence of her husband after he complained about the cleaning performed by the regular janitorial staff, or whether her husband merely suggested she

be hired in response to difficulties Carl McCrary, the Village's Director of Public Works, was having filling the position. In any event, because she had a full-time job during the day, Plaintiff was allowed to perform her work for the Village during the evening hours and on weekends. The cost of Plaintiff's position was taken from the Police Department's building budget, which was overseen by her husband. Plaintiff had her own master key to the building.

In March 2015, McCrary hired a new primary janitor. The new janitor was also given permission to work at night and on weekends because she likewise had a full-time position during the day. Sometime in February or April 2016, McCrary became suspicious that the new janitor was falsifying the hours she worked on her timesheet. He was also concerned that she had unsupervised access to confidential Village and taxpayer information in the offices she was cleaning. To prevent any misconduct, McCrary instructed the new janitor that she would have to perform her work during regular business hours. The new janitor decided it would be too difficult to work during "regular business hours" in combination with her full-time position and resigned from her employment with the Village on April 16, 2016. The same change in policy was not applied to Plaintiff at that time.

In the meantime, the Village Board filed six unrelated misconduct charges against Plaintiff's husband, and he was placed on paid administrative leave effective October 2016 and denied access to police files or his office. In January 2017, on the advice of the Village Attorney, McCrary issued a written policy requiring all janitorial duties to occur during regular Village business hours. On January 4, 2014, McCrary issued a letter to Janitorial Staff stating, in relevant part:

> I have reviewed my policy on routine maintenance and cleaning throughout the Municipal Services Center, and have decided it would be best to apply the same standards uniformly. Similar to the policy changes previously made regarding the routine hours of operation for janitorial staff in the Library, Community Center,

and Administration Departments, I am now updating all janitorial position policies across the board to the following:

- All cleaning must be done while supervisory staff are on duty.
- Hours of operation for janitorial staff are Monday through Friday, between the hours of 7:00 a.m. and 3:30 p.m.
- Janitorial staff are not allowed to be in the building after hours, or unsupervised at any time.

If there are any further questions on this matter, please contact me.

At the time the new written policy was issued, Plaintiff was the only member of the janitorial staff affected. Plaintiff contends that Wessel was involved in issuing the policy change because McCrary notified her of the decision to change the schedule policy.

Plaintiff did not report to work after January 4, 2017, and did not call in to state that she would not come to work. Plaintiff contends that she left McCrary one voicemail in response to his January 4, 2017 letter, but he never returned her call. From approximately January 8, 2017, until May 27, 2017, Plaintiff submitted bi-weekly timesheets showing "0" hours worked. During Plaintiff's absence, the Village's primary part-time janitorial employee cleaned the police department and municipal offices.

In March 2017, Chief Sullivan returned from administrative leave. Plaintiff asserts that, once he returned to work, Wessel spent significant amounts of time trying to "oust" him from his position as Chief. Mr. Sullivan and Wessel's relationship was strained after Mr. Sullivan made public comments about her. Mr. Sullivan ultimately resigned from his role as Chief of Police.

On May 31, 2017, Wessel sent Plaintiff a letter which states, in relevant part, "The Village of Hortonville is no longer in need of your services. Your last day of employment with the Village is recorded as January 1, 2017, which is the last date worked." Wessel consulted with a labor attorney before terminating Plaintiff. Wessel asserts that the policy to perform cleaning duties during regular business hours was and continues to be enforced for all janitorial staff.

3

**LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[A] 'metaphysical doubt' regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and 'the nonmovant fails to demonstrate a genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Id.* (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

**ANALYSIS**

Plaintiff claims that, "[b]y terminating her because of her marriage to Michael Sullivan, Wessel violated Robbin Sullivan's First Amendment Rights to intimate association." Compl.

¶ 13, Dkt. No. 1.  The Supreme Court has held that the right to marry is a fundamental right protected by the First Amendment and the substantive component of the Due Process Clause of the Fourteenth Amendment.  *See Roberts v. United States Jaycees*, 468 U.S. 609, 619–20 (1984); *Planned Parenthood v. Casey*, 505 U.S. 833, 847–48 (1992); *Zablocki v. Redhail*, 434 U.S. 374, 383–85 (1978); *Loving v. Virginia*, 388 U.S. 1, 12 (1967).  But despite the significance of such a right, the Court has not held that every statute or governmental action "which relates in any way to the incidents of or prerequisites for marriage" must be subjected to strict scrutiny.  *Zablocki*, 434 U.S. at 386.  "To the contrary," the Court has held, "reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may legitimately be imposed."  *Id.*  Whether governmental action that impinges on the right to marry is evaluated under strict scrutiny or rational basis analysis depends upon whether the statute significantly interferes with the decision to marry.  *Parks v. City of Warner Robins*, 43 F.3d 609, 613 (11th Cir. 1995).

A statutory classification must interfere "directly and substantially" with the right to marry in order for strict scrutiny analysis to apply.  *Zablocki*, 434 U.S. at 387.  In *Loving v. Virginia*, for example, the Court struck down as violative of the "freedom of choice to marry" an anti-miscegenation statute that voided interracial marriages and made them punishable as felonies.  388 U.S. at 4, 12.  Similarly, in *Zablocki*, the Court ruled unconstitutional a state statute that required Wisconsin residents with child support obligations to obtain a court order before they could marry.  Under the statute there at issue, courts could grant such permission only if the obligated parent could produce proof of support and could demonstrate that the children so supported were "not then and [were] not likely thereafter to become public charges."  434 U.S. at 375.  The statute voided marriages contracted in any jurisdiction without the required court order

and subjected violators to criminal punishment. The Supreme Court concluded that these statutes were impermissible direct restraints on the freedom to marry. *Id.* at 387.

In this case, by contrast, the policy change that apparently led to Plaintiff's failure to come to work and her eventual termination simply required Plaintiff to fulfill her job responsibilities at a time when she could be properly supervised. The same policy applied to all janitorial staff and had nothing to do with whether Plaintiff was married to another Village employee or not. The fact that Plaintiff's husband was Chief of Police at the time seems to have played no role in either the adoption or application of the policy. But even if it did, this is not the kind of "direct and substantial interference" with the right to marry that is of constitutional import. Anti-nepotism policies that prohibit family members of supervisory employees from working in the same department are common, and have never been found to violate the Constitution. *Parks*, 43 F.3d at 614. The avoidance of favoritism that such policies are intended to ensure more than meets the rational basis needed to justify them. And while the Chief may deny that he ever exercised authority over his wife, he was the only Village officer in a position to supervise her work.

Plaintiff's claim thus fails both factually and legally. It fails factually because the undisputed evidence establishes that Wessel had no involvement in the policy change that required Plaintiff to perform her duties during regular daytime hours when other Village personnel were present. The undisputed evidence is that McCrary adopted the policy at the urging of the Village Attorney. Plaintiff's assertions to the contrary are based on nothing but innuendo and speculation. Even if Wessel had been involved in effecting such a change, it would have been entirely proper for her to do so. The policy change is entirely reasonable and had nothing to do with Plaintiff's marriage. Furthermore, Plaintiff was not terminated because she was married to the Chief of Police; she was terminated because she stopped coming to work. Finally, even if

there was evidence Plaintiff was terminated because Wessel didn't want the wife of the Village Police Chief working under his supervision, no constitutional violation occurred for the reasons set forth above.  And given the failure of Plaintiff's claim on its face, there is no need to address whether Wessel is entitled to good faith immunity.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment (Dkt. No. 9) is **GRANTED** and this case is dismissed.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 14th day of April, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court